## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| WASIM SHAZAD | : | No. 21-477 |
| | : | |

### MEMORANDUM

PRATTER, J.                                                                        JUNE 13, 2023

The Sixth Amendment entitles criminal defendants to representation that results in fair trials and fair sentences. It does not, however, entitle those defendants to counsel who will raise quixotic arguments that will not, with any degree of reasonable probability, change the outcome of a case.

Wasim Shazad filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Mr. Shazad alleges that his counsel provided ineffective assistance at multiple stages of this case. The Government opposes Mr. Shazad's motion. For the reasons stated below, Mr. Shazad's motion for habeas corpus relief is denied.

### BACKGROUND

Mr. Shazad sold a 16.56 carat diamond and platinum necklace for $24,000 in cash to an undercover officer, whom Mr. Shazad believed to be a drug dealer, in June 2018. In August 2018, he sold a 2.01 carat canary diamond and platinum ring to the same officer for $23,000 in cash. Mr. Shazad failed to file the required report for these cash sales, as both sales exceeded $10,000. On September 24, 2021, Mr. Shazad was charged by information with two counts of money laundering in violation of 18 U.S.C. § 1956(a)(3)(B), (C) (Counts I and III) and two counts of failing to file a record of financial transaction, in violation of 31 U.S.C. § 5324(b)(1) (Counts II and IV).

Mr. Shazad entered into a plea agreement with the Government pursuant to Federal Rule of Criminal Procedure 11, in which the parties agreed that the Government would "[m]ake whatever sentencing recommendation as to imprisonment, fines, forfeiture, restitution, and other matters which the [G]overnment deems appropriate." Plea Agreement ¶ 2(a). The Government and Mr. Shazad agreed that, because Mr. Shazad had "demonstrated acceptance of responsibility for his offense," he was "eligible for a 2-level downward adjustment under USSG § 3E1.1(a)," and because he had "assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty" he was eligible for "a 1-level downward adjustment under USSG § 3E1.1(b), if [his] offense level is 16 or more." Plea Agreement ¶¶ 10(a), 10(b). Mr. Shazad also agreed to waive his right to file a direct appeal or a collateral attack, with certain exceptions. As relevant here, under the plea agreement, Mr. Shazad could "raise only a claim, if otherwise permitted by law . . . that an attorney who represented [him] during the course of th[e] criminal case provided constitutionally ineffective assistance of counsel." Plea Agreement ¶ 12(b)(iv). Mr. Shazad signed the plea agreement on March 9, 2022.

The Court held a plea hearing, at which Mr. Shazad agreed that he understood his plea agreement and had discussed it thoroughly with his counsel before he signed it. He also understood that, by pleading guilty, he waived his right to a trial of any kind. Mr. Shazad acknowledged that neither his counsel nor the Government could guarantee what sentence the Court would determine Mr. Shazad to have earned. He also agreed that his plea agreement significantly narrowed his opportunities to take an appeal.

The Government then presented the factual basis for Mr. Shazad's plea, and Mr. Shazad confirmed that the Government had accurately summarized the factual basis for his guilty plea. Mr. Shazad stated that he was accepting the plea agreement because he was guilty of the conduct

alleged. The Court then accepted Mr. Shazad's guilty plea and ordered a presentence report to be prepared by the Probation Department before sentencing.

The presentence report included a three-level decrease, consistent with the plea agreement, in consideration of Mr. Shazad's acceptance of responsibility, which resulted in a total offense level of 19.

At Mr. Shazad's sentencing hearing, the Court found that Mr. Shazad's total offense level was 19, having agreed that a downward adjustment of three levels was appropriate in light of Mr. Shazad's acceptance of responsibility and early guilty plea. The Court determined that Mr. Shazad had a Criminal History Category of II, given his prior conviction in the Montgomery County Court of Common Pleas for unrelated conduct. The Court sentenced Mr. Shazad to a term of 33 months' imprisonment on each of Counts I through IV, to run concurrently, to be followed by three years of supervised release. Mr. Shazad's sentence was at the bottom end of an advisory guideline range of 33 to 41 months, and the Court denied any downward variance. The Court also ordered Mr. Shazad to make restitution in the amount of $47,000 and to pay an assessment of $400.

Mr. Shazad did not pursue a direct appeal, but instead filed a counseled § 2255 motion. Mr. Shazad claims he is entitled to relief on four grounds: (1) counsel provided ineffective assistance by failing to attempt to negotiate an earlier plea; (2) counsel was ineffective in failing to file a motion to enjoin prosecution for prejudicial delay; (3) counsel provided ineffective assistance by failing to preserve Mr. Shazad's post-conviction rights; and (4) counsel was ineffective by agreeing to pay unauthorized restitution. The Government filed a response in opposition, in which it argues that Mr. Shazad has failed to meet the standard for a claim of ineffective assistance of counsel. Mr. Shazad later filed his reply. Therefore, the motion is now ripe for disposition.

### LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255,

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). A petitioner bears the burden of "demonstrat[ing] that he has a meritorious substantive claim for relief." *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). That is, the petitioner must show that the usual presumption that criminal proceedings are "proper and legal" is an incorrect presumption in his own case. *United States v. Hollis*, 569 F.2d 199, 205–06 (3d Cir. 1977). Because it is "a collateral challenge, a motion pursuant to 28 U.S.C. § 2255 is reviewed much less favorably than a direct appeal of the sentence," *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014), and relief is only available where "the claimed error of law [i]s a fundamental defect which inherently results in a complete miscarriage of justice, and . . . present(s) exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Davis v. United States*, 417 U.S. 333, 346 (1974) (internal quotation marks omitted).

Generally, if a petitioner's § 2255 allegations raise an issue of material fact, a court must hold an evidentiary hearing. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992); *United States v. Tolliver*, 800 F.3d 138, 142–43 (3d Cir. 2015). In the context of an ineffective assistance of counsel claim, "[i]f a nonfrivolous claim clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing." *United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988). "If, on the other hand, a claim, when taken as true and evaluated in light of the existing record, states a colorable claim for relief . . . , then further factual development in the form of a hearing is required." *Id.*

### DISCUSSION

Each one of Mr. Shazad's four grounds for relief has as its basis ineffective assistance of counsel in violation of the Sixth Amendment, and the two-pronged test for such claims was announced in *Strickland v. Washington*, 466 U.S. 668 (1984). Mr. Shazad was "entitled to be assisted by an attorney, whether retained or appointed, who play[ed] the role necessary to ensure that the trial [w]as fair." *Id.* at 685. The "Sixth Amendment right to counsel . . . extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *see also Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 765 (3d Cir. 2018) ("The right to counsel . . . also protects plea bargaining, in part because poor bargaining can lead to heavier sentences . . . ."). The right additionally extends to sentencing. *Lafler*, 566 U.S. at 165.

In order to succeed on his argument that "counsel's assistance was so defective as to require reversal of [his] conviction," Mr. Shazad must make two showings. *Strickland*, 466 U.S. at 687. "First, [he] must show that counsel's performance was deficient." *Id.* "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Because of those distorting retrospective effects, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The relevant inquiry is whether counsel performed reasonably "considering all the circumstances" and the dictates of "prevailing professional norms." *Id.* at 688; *see also Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999).

Second, Mr. Shazad "must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Put differently, Mr. Shazad is required to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine

5

confidence in the outcome." *Id.* In the context of a claim of ineffective assistance of counsel during the plea bargain stage, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In the context of the sentencing stage, Mr. Shazad must show that "there is a reasonable probability that, had he received effective assistance of counsel at his original sentencing, [Mr. Shazad] would have established that he was entitled to a shorter sentence." *United States v. Smack*, 347 F.3d 533, 540 (3d Cir. 2003).

The *Strickland* test does not mandate that the Court make a determination on the deficiency of counsel's performance before it makes a determination on the prejudice suffered by the defendant—"[i]f it is easier to dispose of an ineffectiveness claim [solely] on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697. A petitioner's "failure to satisfy *either* prong defeats an ineffective assistance claim." *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (emphasis added).

## I.      Counsel's Failure to Attempt to Negotiate an Earlier Plea

Mr. Shazad argues that his counsel deficiently made no attempt to negotiate a guilty plea between the time Mr. Shazad was advised of the federal investigation until Mr. Shazad's arrest on September 24, 2021, which foreclosed an opportunity for Mr. Shazad to serve his federal sentence concurrent to an unrelated state sentence. The Government opposes relief on this ground because Mr. Shazad has failed to establish that his former counsel's allegedly unprofessional errors actually prejudiced him.

"[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). It lies within a prosecutor's

discretion to either enter into a plea agreement or instead proceed to trial. *Bresko v. John*, 87 F. App'x 800, 802–03 (3d Cir. 2004). Mr. Shazad does not contend that the Government ever made a plea offer, either formal or informal, *before* his arrest on September 24, 2021. In petitions raising similar arguments, courts have come to different conclusions as to whether counsel's failure to engage in plea bargaining absent a Government plea offer qualifies as deficient performance. *Shnewer v. United States*, No. 13-cv-3769, 2016 WL 867461, at *19–*21 (D.N.J. Mar. 7, 2016). *Compare McClain v. United States,* No. 12-cv-2205, 2013 WL 1163562, at *4 (D.N.J. Mar. 19, 2013) ("Petitioner's challenges arising from his belief that counsel had a constitutional duty to seek a plea deal and/or to counsel Petitioner on the benefits and obligations of a hypothetical plea offer are without merit. That Petitioner's counsel did not seek a plea deal and did not discuss with Petitioner any aspects of a hypothetical plea deal does not constitute deficient performance under *Strickland*."), *with United States v. Brooks*, No. 10-cv-20078, 2015 WL 5837636, at *6 (D. Kan. Oct. 6, 2015) ("[T]he Court cannot conclude that defendant may not pursue this claim in the absence of a formal plea offer from the Government. . . . If defense counsel acted unreasonably during that process and defendant can establish that a plea agreement would have resulted if not for that deficient performance, the Court sees no reason why the usual two-part *Strickland* test should not be applied."). Given the differing conclusions reached by other district courts on the issue, the Court finds it is more appropriate to analyze Mr. Shazad's argument under the prejudice prong of the *Strickland* test. *Strickland*, 466 U.S. at 697; *see also Shnewer*, 2016 WL 867461, at *21.[1]

---

[1]     As a result, the Court will not address Mr. Shazad's tangential argument that the Government's pre-indictment delay violated his Fifth Amendment right to a fair trial, although the Court notes Mr. Shazad's concession that his current counsel could not "locate any cases that have actually dismissed a prosecution on the ground that prosecutorial delay prevented a defendant from pursuing a concurrent sentence." Mot. to Vacate at 5.

To show prejudice in this context, Mr. Shazad must show (1) "a reasonable probability [he] would have accepted [an] earlier plea offer had [he] been afforded effective assistance of counsel," (2) "a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it," and (3) "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri v. Frye*, 566 U.S. 134, 147 (2012).

First, Mr. Shazad fails to show that the Government would actually have made him a "particular" earlier plea offer that would have enticed him to accept. *See Shnewer*, 2016 WL 867461, at *21. Mr. Shazad offers only rampant speculation as to how his counsel might have negotiated for a plea agreement prior to his 2021 arrest to take advantage of "the height of the COVID-19 pandemic when the government was unable to empanel a grand jury and [before Mr. Shazad] lost negotiating leverage when the justice system returned to normal," notwithstanding the ongoing nature of the Government's investigation through 2021. Def.'s Mot. to Vacate at 4. Mr. Shazad cannot even point to informal discussions with the Government about *hypothetical* terms of a plea deal that would support a reasonable probability that the Government would have been open to Mr. Shazad's federal sentence running concurrent to Mr. Shazad's state sentence. *Cf. Shnewer*, 2016 WL 867461, at *22 (noting that counsel's declaration indicated some discussions about potential pleas whereby certain counts might be dropped).

Second, Mr. Shazad has failed to show a reasonable probability that this Court would have accepted a plea involving a federal sentence running concurrent to Mr. Shazad's state sentence, so there has been no showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A totally speculative harm, or the *mere possibility of receiving a concurrent sentence* does not

8

demonstrate prejudice." *United States v. Hopkins*, 568 F. App'x 143, 148 (3d Cir. 2014) (internal

citations and quotation marks omitted) (emphasis added).

The statute that governs the interaction of multiple sentences of imprisonment provides

that

> if a term of imprisonment is imposed on a defendant who is already subject to an
> undischarged term of imprisonment, the terms may run concurrently or
> consecutively . . . . Multiple terms of imprisonment imposed at the same time run
> concurrently unless the court orders or the statute mandates that the terms are to run
> consecutively. Multiple terms of imprisonment imposed at different times run
> consecutively unless the court orders that the terms are to run concurrently.

18 U.S.C. § 3584(a). Mr. Shazad's state and federal sentences would have been imposed at

different times and  would have run consecutively absent a court order to the contrary  because

Mr. Shazad retained counsel for his federal case only four days before he was sentenced in state

court. *Id.* Mr. Shazad's counsel raised the issue of a lost opportunity for concurrent state and

federal sentences at the federal sentencing hearing in arguing for a downward variance, an

argument which the Court determined lacked merit. As the Court observed at sentencing, Mr.

Shazad's state and federal convictions were for different crimes. Mr. Shazad's state conviction

related to his role as a middleman to a sophisticated burglary ring, for which he knowingly sold

stolen jewelry, while his federal conviction related to money laundering via sales to an individual

he believed to be a drug dealer and his failures to file records of financial transactions. The Court

signaled at sentencing that, even had the state and federal sentencings occurred closer in time, the

Court would not have allowed the sentences to run concurrently. *See* Dec. 5, 2022 Tr. at 37:5–9

(noting that the inappropriateness of crediting time served in state prison for a different crime

"would have been one of my observations if we had been doing this at a time when you wanted

me to consider concurrent things [because] I'm not really fond of the notion that somebody gets

some sort of a bonus because they committed more crimes"); *see also Hopkins*, 568 F. App'x at

148 ("Because it is likely that a federal sentencing court would have wanted to ensure that [the defendant] was separately punished for these separate offenses, it is likely that the court would have ordered its sentence to run consecutive to the future state sentence."). Therefore, Mr. Shazad, in all likelihood, would have received a federal sentence consecutive to his state sentence, even if his counsel had attempted to earlier negotiate a guilty plea.

Because Mr. Shazad has not even approached showing a reasonable probability that a particular plea agreement would have been offered by the Government or that this Court would have accepted such a plea agreement, Mr. Shazad has not established prejudice on this ground and, thus, under *Strickland*, is not entitled to relief on this claim.[2]

## II.    Counsel's Failure to File a Motion to Enjoin Prosecution for Prejudicial Delay

Mr. Shazad also argues that his counsel was ineffective in failing to file a motion to enjoin the federal charges based upon the federal authorities' allegedly intentional delay in prosecuting him. According to Mr. Shazad, filing such a motion, even if unsuccessful, would have motivated the Government to promptly file charges or to afford Mr. Shazad the ability to negotiate a more favorable plea agreement. The Government opposes relief on this basis, arguing that Mr. Shazad's former counsel was not ineffective in failing to file a motion that would have been inappropriate under the circumstances.

---

[2]    As noted above, in the context of sentencing, Mr. Shazad must show that "there is a reasonable probability that, had he received effective assistance of counsel at his original sentencing, [Mr. Shazad] would have established that he was entitled to a shorter sentence." *Smack*, 347 F.3d at 540. Here, not only has Mr. Shazad failed to show that he would have been entitled to concurrent state and federal sentences, but he has also failed to point to any evidence that he would have been entitled to a shorter sentence but for his counsel's alleged ineffectiveness. Mr. Shazad was sentenced to 33 months' imprisonment, which was at the bottom end of an advisory guideline range of 33 to 41 months. There is no reasonable probability that Mr. Shazad would have earned a shorter sentence than this. Thus, he has not established prejudice on this ground and, under *Strickland*, is not entitled to relief.

A defendant who seeks to obtain an injunction against a criminal investigation or prosecution faces an "all but impossible task," and grants of motions to enjoin appear to be vanishingly rare.[3] 1-4 Paul S. Diamond, *Federal Grand Jury Practice and Procedure* § 4.01(E) (2007); *see also Metro Med. Supply, Inc. v. Shalala*, 959 F. Supp. 799, 802 (M.D. Tenn. 1996) ("This Court has found no published decision in which a court enjoined an ongoing federal criminal investigation under similar circumstances."); *Blalock v. United States*, 844 F.2d 1546, 1552 (11th Cir. 1988) (denying injunction against prosecutor where appellant failed to establish that "further injury was likely to occur" absent a stay); *In re Grand Jury Proceedings (Johanson)*, 632 F.2d 1033, 1038 (3d Cir. 1980) (refusing to stay grand jury proceedings relating to whether criminal proceedings should be initiated against a defendant). That is because courts are loathe to interfere with grand juries, which are meant to operate independently from judicial control and to be answerable instead to the community from which its members are drawn. *See In re Kittle*, 180 F. 946, 947 (S.D.N.Y. 1910). Theoretically, however, an injunction *could* be granted against a prosecutor if the moving party could prove the following elements: (1) "that the issuance of an injunction is necessary to prevent the occurrence of immediate and irreparable harm;" (2) "that the moving party is without an adequate remedy at law;" (3) "that the moving party is likely to prevail on the merits of the underlying dispute;" (4) "that an injunction will preserve the status quo;" and (5) "that the public interest is best served by the issuance of an injunction." 1-4 Diamond, *Federal Grand Jury Practice and Procedure* § 4.01(E).

Here, Mr. Shazad has not put forth any evidence that would suggest that his counsel might have overcome this apparently Sisyphean task and successfully moved to enjoin the prosecution. He does not respond substantively to the Government's contention that Mr. Shazad "had little

---

[3]     Mr. Shazad fails to cite to any cases where a motion to enjoin a criminal prosecution has been successful.

likelihood of success on the merits; [that] irreparable harm would not occur without such an injunction; and [that] such an injunction would inappropriately circumvent the Rules of Criminal Procedure, as [Mr. Shazad] had the remedy of a dismissal under Rule 12 of the Federal Rules of Criminal Procedure, if appropriate." Gov.'s Resp. at 19. Instead, Mr. Shazad merely suggests that his counsel was ineffective for failing to file a motion to enjoin the prosecution *notwithstanding* the improbability of success. But that line of thinking is patently wrong because "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Thus, counsel's failure to file a motion to enjoin the prosecution cannot be considered objectively unreasonable under the first prong of *Strickland. Cf. United States v. Alberto-Sosa*, No. 20-cv-5721, 2023 WL 349785, at *5 (E.D. Pa. Jan. 20, 2023) (finding that because the defendant failed to submit evidence of intentional Government delay in bringing the indictment or resulting prejudice, the indictment was not subject to dismissal and trial counsel was not ineffective for failing to file a motion to dismiss); *United States v. Whoolery*, No. 10-cr-144-02, 2016 WL 3854874, at *7 (W.D. Pa. July 15, 2016) (concluding that counsel's performance was not deficient in failing to file a motion to dismiss the indictment on statute of limitations grounds because the original indictment was timely filed). In fact, had counsel attempted to file such a motion without factual basis, "it might well have violated counsel's duty of candor to the Court, to the Bar, and to [Mr. Shazad] himself to advance such an untenable [position]." *United States v. Curington*, No. 12-cr-31, 2016 WL 4761937, at *5 (W.D. Pa. Sept. 12, 2016).

Moreover, it logically follows that Mr. Shazad cannot establish, under *Strickland*'s second prong, any reasonable probability that the result of the criminal proceedings would have been different if his counsel had filed a motion to enjoin the prosecution. Any conjecture that the mere

filing of a motion for injunctive relief "would have motivated the government to either promptly

file charges, or to afford [Mr. Shazad] the ability to negotiate a more favorable plea agreement,"

is unsupported speculation. *Cf. Whoolery*, 2016 WL 3854874, at \*9 (finding no prejudice where

counsel failed to file a motion to dismiss that would have been futile due to a lack of factual basis);

*United States v. Hampton*, No. 15-cr-302, 2021 WL 1088289, at \*5 (E.D. Pa. Mar. 22, 2021)

("Instead of attempting to show that the Government's alleged delay was deliberate and

prejudicial, [the defendant] says only that 'clearly the government's actions and delay were an

intentional device employed to gain tactical advantage and harass [him,] and the delay resulted in

actual and substantial prejudice' [and such a] bare conclusion falls woefully short of satisfying the

standards for relief under . . . *Strickland*.").

  For these reasons, Mr. Shazad's second claim for relief is denied.

### III. Counsel's Failure to Preserve Mr. Shazad's Post-Conviction Rights

  Mr. Shazad next alleges that his counsel provided ineffective assistance by negotiating a

plea agreement in which Mr. Shazad waived his right to seek post-sentence relief either by direct

appeal or by collateral attack, effectively requiring Mr. Shazad to enter an "open" plea and

relinquish his rights with no benefit to him and without receiving any consideration in exchange.

The Government argues that Mr. Shazad mischaracterizes the plea agreement.

  A valid guilty plea must be entered intelligently and voluntarily. *Boykin v. Alabama*, 395

U.S. 238, 242 (1969). Counsel's performance is not objectively unreasonable where a § 2255

petitioner could "make a reasonably informed decision whether to accept a plea offer." *United

States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992). To establish prejudice under Strickland's second

prong in the plea-bargaining process, a petitioner "must show that there is a reasonable probability

that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Moreover, it is axiomatic that "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley v. United States*, 523 U.S. 614, 621 (1998). This limitation is motivated by "concern[s] with finality" relating to guilty pleas. *Id.* (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

The plea agreement informed Mr. Shazad that "[a]t the time of sentencing, the government will . . . [m]ake whatever sentencing recommendation as to imprisonment, fines forfeiture, restitution, and other matters which the government deems appropriate," Plea Agreement ¶ 2(a), and further, that "[i]n exchange for the promises made by the government in entering this plea agreement, [Mr. Shazad] voluntarily and expressly waive[d] all rights to file any appeal, any collateral attack, or any other writ or motion that challenges [his] conviction, sentence, or any other matter relating to this prosecution." Plea Agreement ¶ 12. Despite his contentions, Mr. Shazad *did* receive a benefit from this plea agreement. The Government and Mr. Shazad agreed that Mr. Shazad "ha[d] demonstrated acceptance of responsibility for his offense, making [him] eligible for a 2-level downward adjustment under" the sentencing guidelines. Plea Agreement ¶ 10(a). Moreover, the parties agreed that Mr. Shazad had "assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, resulting in a 1-level downward adjustment under [the sentencing guidelines], if [Mr. Shazad's] offense level is 16 or more." Plea Agreement ¶ 10(b). At Mr. Shazad's sentencing hearing, the Court found a downward adjustment of three levels was appropriate in light of Mr. Shazad's acceptance of responsibility and early guilty plea. So, the

Court does not credit Mr. Shazad's contention that he received no benefit in exchange for his election to waive his appellate rights.

Mr. Shazad also does not show that his counsel failed to discuss with him the effects of his appellate waiver. In signing his plea agreement, Mr. Shazad affirmed that he was "satisfied with the legal representation provided by the defendant's lawyer [and he] and this lawyer ha[d] fully discussed this plea agreement." Plea Agreement ¶ 16. As discussed above, the plea agreement specifically states that Mr. Shazad "voluntarily and expressly waive[d] all rights to file any appeal, any collateral attack, or any other writ or motion that challenges the defendant's conviction, sentence, or any other matter relating to this prosecution." Plea Agreement ¶ 12. Mr. Shazad also signed an attachment to his plea agreement, titled "Acknowledgment of Rights," where he reaffirmed his understanding that by pleading guilty, he "ha[d] given up [his] right to appeal, except as set forth in the appellate waiver provisions of [his] plea agreement." Acknowledgment of Rights ¶ 6.

The Court then thoroughly reviewed Mr. Shazad's plea agreement at his plea hearing. During the hearing, the Government, summarizing the plea agreement, confirmed that "filing an appeal or collateral attack waived in paragraph 12 of the plea agreement may constitute a breach of the agreement." Mar. 9, 2022 Tr. at 25:1–3. The Court's plea colloquy reaffirmed that Mr. Shazad knowingly and voluntarily waived his right of appeal, except in extremely limited circumstances.

> THE COURT: And according to this deal that you've worked out with the Government, you can only take an appeal in a few very rare, very narrow circumstances. For example, if for some reason, the Government were to appeal your sentence which you should know does not happen very often, then you could take an appeal. If I were to impose an illegal sentence or a sentence unreasonably above the Guidelines, you can take an appeal but I want you to know that doesn't happen very often . . . .

THE DEFENDANT: Right.

. . .

THE COURT: If there were something manifestly unfair about these proceedings, you could maybe take an appeal or if your lawyer failed to provide you with what we call constitutionally effective representation, then you could take an indirect appeal. . . . An indirect appeal you could argue that your lawyer did not perform up to snuff.

THE DEFENDANT: Oh, right.

THE COURT: That remains available to you but it's not really something to count on. The point being here, sir, is this is pretty much the end of the road if you plead guilty on these charges. Do you understand that?

THE DEFENDANT: Yeah, I do understand.

THE COURT: So, if you plead guilty and if I accept your plea, do you understand you're going to be waiving, meaning give up forever, your right to a further trial of any kind as well as all these other rights we've been talking about?

THE DEFENDANT: Right.

THE COURT: And that includes the right to pursue a direct or an indirect appeal, right.

THE DEFENDANT: Correct.

THE COURT: Any questions so far?

THE DEFENDANT: No.

THE COURT: Do you understand what's going on?

THE DEFENDANT: Yes.

THE COURT: So do you understand that by pleading guilty and by waiving all these rights, you cannot later come to any court anywhere, including any appeals court, and claim you were not guilty or your rights relating to this prosecution have been violated. Correct?

THE DEFENDANT: Correct.

*Id.* at 33:7–16, 33:19–23, 34:2–35:3. This colloquy, when considered together with the signed Plea Agreement and Acknowledgment of Rights, dispel any notion that Mr. Shazad could not "make a reasonably informed decision whether to accept a plea offer," with full consideration of how accepting such an offer would affect his appellate rights. *Day*, 969 F.2d at 43. Counsel's performance was therefore not objectively deficient at the plea-bargaining stage.

Moreover, Mr. Shazad has gestured to nothing in the record that would suggest that, but for his counsel's failure to preserve Mr. Shazad's post-conviction rights, he would not have pled guilty and *instead would have elected to proceed to trial*, which is the yardstick for measuring prejudice at the plea bargain stage. *Hill*, 474 U.S. at 59. Nor does Mr. Shazad demonstrate that his counsel had *any* leverage to obtain a more favorable plea deal, particularly relating to preservation of direct appeal and collateral attack rights. *Cf. United States v. Porter*, No. 18-cr-36, 2022 WL 17852017, at *6 (W.D. Pa. Dec. 22, 2022). There was no prejudice here.

Therefore, Mr. Shazad has failed to meet either prong of the *Strickland* test, and the Court declines to grant him relief on this ground.

### IV.   Counsel's Failure to Oppose Payment of Restitution

Mr. Shazad asserts that his counsel was ineffective by negotiating a plea agreement that obligated Mr. Shazad to pay the Government $47,000 as restitution of the funds, which were represented to be illegal drug proceeds, that an undercover officer used to purchase jewelry from Mr. Shazad's business when the Government retained possession of the jewelry acquired in the sting operation.[4]

"The plain and unambiguous language of § 2255 indicates that the statute only applies to '[a] prisoner in custody . . . claiming the right to be released.'" *United States v. Trimble*, 12 F.

---

[4]      The Court has already ruled separately on Mr. Shazad's motion for the return of the purchased jewelry. *See United States v. Shazad*, No. 21-cr-477, 2023 WL 3611543, at *3 (E.D. Pa. May 22, 2023).

Supp. 3d 742, 745 (E.D. Pa. 2014) (quoting 28 U.S.C. § 2255(a)). Third Circuit Court of Appeals precedent "holds that the monetary component of a sentence is not capable of satisfying the 'in custody' requirement of federal habeas statutes." *United States v. Ross*, 801 F.3d 374, 380 (3d Cir. 2015); *accord Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003); *Ridley v. Smith,* 179 F. App'x 109, 111 (3d Cir. 2006); *Durante v. United States*, No. 16-cv-8949, 2020 WL 205895, at *10 (D.N.J. Jan. 13, 2020). A claim for relief from a restitution order is not alchemically transformed into a cognizable claim itself merely because it is raised in a petition that also contains cognizable claims for release from custody. *Trimble*, 12 F. Supp. 3d at 745–46. Nor is a similar transmutation achieved by raising "a challenge to a restitution order brought under the guise of an ineffective assistance of counsel claim." *Id.* at 746 (citing *Shephard v. United States*, 735 F.3d 797, 798 (8th Cir. 2013); *Kaminski v. United States*, 339 F.3d 84, 85 n.1 (2d Cir. 2003); *United States v. Thiele*, 314 F.3d 399, 402 (9th Cir. 2002); *Smullen v. United States*, 94 F.3d 20, 26 (1st Cir. 1996); *United States v. Segler*, 37 F.3d 1131, 1137 (5th Cir.1994)). *But see Weinberger v. United States*, 268 F.3d 346, 351 n.1 (6th Cir. 2001) (following Sixth Circuit precedent in "allowing a petitioner to contest a restitution order under § 2255 based on a meritorious ineffective assistance of counsel claim").

Because this fourth claim relates to counsel's alleged failures in relation to a restitution order and not to Mr. Shazad's physical custody, it provides no basis for relief under § 2255.

## V.    Certificate of Appealability

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B). Such a certificate may issue only if Mr. Shazad "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). "A petitioner satisfies this

standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Jurists of reason could not disagree with the Court's conclusion that Mr. Shazad has not met his burden to show ineffective assistance of counsel in violation of the Sixth Amendment, so no certificate of appealability will issue.

### CONCLUSION

For these reasons, Mr. Shazad has failed to establish a colorable ineffective assistance of counsel claim based on former counsel's assistance at the plea or sentencing stage. Therefore, Mr. Shazad's § 2255 motion is denied without an evidentiary hearing. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE